### IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

# AT MACON,

## FEBRUARY TERM, 1855.

Present—JOSEPH H. LUMPKIN,
EBENEZER STARNES, } Judges.
HENRY L. BENNING,

No. 46.—GEORGE R. HUNTER, administrator of Henry R. M. Stembridge, plaintiff in error, *vs.* JOHN STEMBRIDGE, as trustee of Sarah Stembridge, and Sarah Stembridge, defendants in error.

[1.] A ratification of part of a contract, is the ratification of the whole.

In Equity, from Crawford County. Decision by Judge POWERS.

In 1837, Thomas Stembridge made his will, and, by the third item thereof, he gave to his son, Henry R. M. Stembridge, his plantation, comprised in lot of land number twenty-six, in the third district of Houston County. By the first item of the will he said, "I allow my son Henry R. M. Stembridge to give her (wife Sarah) a support out of the plantation, during her life time." Thos. Stembridge died, and his will was duly

proven. Henry R. M. Stembridge afterwards died intestate, and George R. Hunter was appointed his administrator. The widow of Henry R. M. Stembridge afterwards intermarried with one Jacob B. Nelson. John Stembridge was appointed trustee for Sarah Stembridge, the widow of Thomas Stembridge. An agreement was entered into by which Sarah Stembridge consented to relinquish her charge for support on the land, and consented that it should be sold by George R. Hunter, as administrator of Henry R. M. Stembridge, free from all such incumbrance; and in consideration thereof, Jacob B. Nelson executed his bond to deposit in the hands of said Hunter—$200, to be applied to the support of said Sarah Stembridge ; and if this fund should be exhausted before her death, he agrees to allow her the further sum of fifty dollars per annum during her life. Fifty dollars of this sum of two hundred dollars was paid by Hunter to Mrs. Stembridge. The land was accordingly sold and bought by one Morgan Hancock. Sarah Stembridge and her trustee now filed this bill, setting forth the above facts, and alleging that said Sarah was old and in her dotage, and that the contract was the result of a fradulent combination by George R. Hunter and Jacob B. Nelson, to take advantage of her helplessness and defraud her out of her support from said land. The bill alleged, that if said Hancock was permitted to pay the purchase-money for said land to Hunter, that said Sarah Stembridge would be in danger of want in her old age and needy condition, and the provident intention of her husband would be defeated, as the said Nelson was utterly insolvent. The bill ratifies, on the part of Mrs. Sarah Stembridge, the sale of the land by Hunter as administrator, and claims a support for her for life out of the proceeds of the sale of the land. The bill did not ask for the enforcement of the *contract,* but prayed that it be cancelled, and the trust *for the support* of Sarah Stembridge should attach upon the proceeds of the sale of the land in the hands of Morgan Hancock ; and that said George R. Hunter should be enjoined from trading the notes on said Hancock.

Nelson, living in the State of Alabama, was not served; Hun-

ter answered the bill, and denied the charges of fraud in the procurement of the contract, and the fraudulent combination charged against him, and swore off the main equitable allegations in the bill, and alleged that the contract of Sarah Stembridge and Jacob B. Nelson, was knowingly and fairly made, and that she was entitled only according to its provisions. The answer also set up, that before said Nelson had reduced the funds to possession, he *died ;* and that therefore, the effects being choses in action, survived to his wife ; and that he had declined to pay it out to said Sarah Stembridge, on her contract with Nelson, because, if he did so, that he would be liable to pay it again, or at least, the one *third* portion, (the portion to which the widow of said Henry R. M. Stembridge was entitled, the other two thirds belonging to his children.)

The answer also set up a claim for certain sums, in favor of said Hunter, for fees and commissions.    The answer also states, that the relinquishment of Mrs. Sarah Stembridge was executed in consideration, not only of the bond aforesaid, made by Nelson, but also in consideration of an order drawn by Nelson on Hunter, by which he directed Hunter to retain out of his, N's share of the first payment for the land, one hundred and seventy-five dollars, to be applied by him, Hunter, to the support of Mrs. Sarah Stembridge, according to an obligation given by him, Nelson, to his trustee, Jno. Stembridge : The answer states that this order was read over to Jno. Stembridge, the trustee, and approved by him ; that after the order was executed Hunter paid Jno. Stembridge, the complainant, twenty-five dollars under the order; that Nelson had before, through Hunter, paid complainant twenty-five dollars as part of the two hundred dollars mentioned in the bond; and thus, that at the time of Nelson's death, no more than one hundred and fifty of the two hundred dollars remained unpaid.

On the trial of the cause, the defendant (G. R. Hunter) offered to read in evidence a copy of his return to the Court of Ordinary, as administrator of H. R. M. Stembridge, deceased, and this, the Court refused to permit.    Defendant also offered to prove the amount of commissions to which he was entitled,

as administrator of H. R. M. Stembridge, and the amount of costs and Counsel fees paid by him on account of the litigation in this case; and the Court rejected this evidence also, and defendant excepted.

Defendant also asked the Court, in writing, to charge the Jury—1st. "That complainant is concluded by the contract with Nelson, from setting up any claim to the money in defendant's hands, if the Jury believe from the evidence that the contract set up in complainant's bill, was made by the trustee and acquiesced in."

2d. "That under the facts of this case, complainant is not entitled to a decree; and if so, only to the *interest* on the moey in defendant's hands."

The Court declined so to charge the Jury, but charged, "that complainant was entitled to recover from the administrator, whatever amount might be necessary and proper to give her a *comfortable* support from 1st January, 1851; and to continue as long as she lived, or until the money in the hands of the administrator of Henry R. M. Stembridge, arising from the sale of the land, was exhausted."

And these rulings, charge and refusals to charge, are now assigned as error.

HUNTER & BAILEY, for plaintiff in error.

COOK & MONTFORT; MILLER & HALL, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

Mrs. Sarah Stembridge says, in the bill that she ratifies the sale of the land.

This sale took place in pursuance of the agreement entered into by John Stembridge, her trustee, with Nelson—an agreement by which she was to relinquish her right to a support, during her life, from the land; and in lieu of that right, accept, first, the bond of Nelson, binding him to deposit with

Hunter two hundred dollars, to be applied to her support, at the rate of fifty dollars a year; and also, binding him, if she should live so long as to require more than the $200 to pay her more, at the rate of fifty dollars a year, as long as she should live.   Secondly, the order of Nelson on Hunter, requiring Hunter to retain out of his, N's. share of the first payment for the land, one hundred and seventy-five dollars, to be applied by H. to her support, according to the terms of the bond.

The administrator, Hunter, acting on this agreement, sold the land free from the charge on it for the support of Mrs. Stembridge.

And it is the sale of the land thus sold, which she says she ratifies.

It appears, also, that Mrs. Stembridge actually received, under this agreement, a part of the money stipulated to be paid for her support, viz: fifty dollars—twenty-five at one time, and twenty-five at another.

Thus, then, it seems that Mrs. Stembridge has ratified *parts* of the agreement.

[1.] But it is a principle of law, that the ratification of a part of a contract, is the ratification of the whole. (*Wilson vs. Poulter*, 2 *Story* 859. *Billon vs. Hyde*, 1 *Atk.* 128. *And see Smith's Mer. Law*, 60. *Addison on Contracts*, 398. *Story Ag.* §250.

It follows that Mrs. Stembridge, in ratifying parts of this contract, ratified the whole of it.

And the whole contract, then, being to be considered as binding on her, it is a consequence, that she has no rights except such as she derives from the contract.

But from the contract, she derives no right as to the proceeds of the sale of the land, except a right to have two hundred dollars of those proceeds retained in Hunter's hands for her use.

The charge of the Court below, therefore, that "complainant was entitled to recover from the administrator," Hunter, "whatever amount might be necessary and proper to give her a *com-*

*fortable* support, from the first of January, 1851," &c. was erroneous. In no case could she have been entitled to more than $150 besides, perhaps, interest from *Hunter*.

But the administrator, Hunter, in his answer, says, that Nelson died, without having reduced into his possession the proceeds of the sale of the land. And he insists, that those proceeds go to Mrs. Nelson by survivorship; and therefore, that by the death of Nelson, the order on those proceeds, made by him in favor of Mrs. Stembridge, became void.

If this statement in the answer be true, that position of Mr. Hunter, is one deserving of the most serious consideration. It is a statement, however, which seems to be without evidence —which seems not to have received the notice of the Court below, and which was not argued on authority before this Court. For this Court, therefore, to express an opinion on it, would not be proper. I may, however, indicate some sources from which arguments that bear upon it may, perhaps, be drawn. (*Bell vs. Bell*, 1 *Kelly*, 637. *Sayre and another vs. Flournoy and another*, 3 *do.* 541. *Marqueen, Hus. & Wife*, 47, 48, 55, 56, 62, '3, '4, '5, '6. *Hill on Trustees*, 415, *and note* 1, 416 *et seq.*)

So there ought to be a new trial.

Our view of the case being such as it is, it becomes unnecessary to say more than what is implied in that view, on the remaining points in the case.

I may remark, that when this case was up before, nothing was *considered* by this Court, but what was the import and effect of a clause in the will of Thomas Stembridge.