COLLINS, executor, *et al.* v. AMERICAN EXCHANGE NATIONAL BANK *et al.; et vice versa.*

1. Inasmuch as there was not such a duplication of the evidence, by copying it in full in the bill of exceptions and in the record, as to bring it within the rule laid down in the case of *Delk* v. *Pickens*, 92 *Ga.* 576 (17 S. E. 862), this court will not so apply that rule as to dismiss the bill of exceptions.

2. There was evidence authorizing the finding of the auditor that the notes upon which the claims of the American Exchange National Bank and of the Mechanics and Metals National Bank are based were duly executed.

3. Where the directors of a bank passed a resolution duly authorizing certain of its officers to borrow money from another bank and to execute the borrowing bank's promissory notes for the amount and deposit bills receivable as collateral security, and where there was thereafter a course of dealing between the two banks in accordance with this resolution, the execution of a note by the officers of the borrowing bank and the transfer and assignment of collaterals to secure its payment is not invalid for want of authority on the part of the parties giving the note and transferring the collateral, although the note was not given immediately after the passage of the resolution, it appearing that there was no revocation of the authority to borrow money and give such note. And renewals of the note given in pursuance of the authority thus conferred stand upon the same footing as the original note, unless such renewals were given under circumstances which rendered them obnoxious to the law which inhibits the giving of preferences by banks when in failing circumstances. Applying this ruling to the evidence, there was no error in overruling the exceptions to those portions of the auditor's report favorable to the claims of the American Exchange National Bank and the Mechanics and Metals National Bank.

4. The court below did not err in overruling the exception to the finding of the auditor allowing certain credits, which exception was based on the ground that the finding was without evidence to support it.

5. There was no error in overruling the exceptions to those portions of the auditor's report referred to in the assignments of error numbered 3, 4, 5, 6, 7, and 8 in the bill of exceptions.

6. The court did not err in overruling the exceptions to the finding of the auditor sustaining the demurrer to the cross-petition of the depositors, setting up that the notes relied upon by the creditor banks were renewals taken at a time when the debtor bank was insolvent, and setting forth circumstances to show that the creditor banks had notice of this.

7. Section 2354 of the Civil Code, giving a lien to creditors of a bank for collections on collaterals, is not void because violative of par. 2 of sec. 1 of art. 1 of the constitution of the State of Georgia (Civil Code, § 6358), which provides that protection to person and property is the paramount duty of government, and shall be impartial and complete.

8. Nor is § 2354 unconstitutional on the ground that it violates the due-

process clause of the constitution of this State; nor on the ground that no provision is made for asserting and foreclosing the lien, and that there is no time fixed by the statute as to when the lien shall begin or when it shall operate. It is not necessary that the section should contain in itself a prescribed procedure for the enforcement of a lien; and the limitation as to when the lien shall begin and operate can be established by the application of other provisions of the Civil Code, upon a kindred subject.

9. The court below properly refused to approve the auditor's conclusion of law as to the manner and extent of participation in the dividends, as the auditor's finding upon this subject is not in accord with the ruling made by this court in the case of *Citizens & Southern Bank* v. *Alexander*, ante, 74.

10. The court erred in overruling the finding of the auditor which held that the holders of collaterals were entitled to certain specified expenses necessarily incurred in realizing upon the collaterals.

AUGUST 31, 1917. REHEARING DENIED SEPTEMBER 17, 1917.

Exceptions to auditor's report. Before Judge Littlejohn. Sumter superior court. July 28, 1916.

*R. L. Maynard* and *C. R. McCrory,* for Collins et al.

*Wallis & Fort,* for American Exchange National Bank.

*E. A. Hawkins* and *Hardeman, Jones, Park & Johnston,* for other creditors. *Ellis, Webb & Ellis,* for receiver.

BECK, J. The State of Georgia filed its petition for injunction and receivership against the Bank of Southwestern Georgia, it being alleged, that on the 5th day of March, 1915, that bank had placed its affairs and assets under the control of the State bank examiner, by posting a notice in accordance with the statute on the front door of the building in the City of Americus; that the examiner had taken possession of the bank, together with all of its assets and property of every nature and kind; and that after examination duly completed he was satisfied that the bank could not resume business and liquidate its indebtedness, and he thereupon reported the fact of the insolvency of the banking corporation, etc. The attorney-general of the State was duly instructed to institute proper proceedings for the purpose of having a receiver appointed to take charge of the bank and to wind up its affairs and business. The petition coming on to be heard on a date named, L. G. Council was appointed permanent receiver of the property of the insolvent bank, and was given appropriate instructions as to his duties. Numerous creditors of the bank intervened and became parties to the proceedings. E. E. Collins, executor, and oth-

ers as depositors were among the intervenors, as were also the American Exchange National Bank of New York, the Mechanics and Metals National Bank of New York, and other creditors whom it is unnecessary to name, as they are not parties to the bill of exceptions in these cases. For the sake of convenience, the Bank of Southwestern Georgia is referred to as the defendant bank, and sometimes as the debtor bank or the borrowing bank; Collins, executor, and the other depositors who were made parties as intervenors are referred to as depositors; the American Exchange National Bank of New York is referred to as the American Bank, and sometimes as the creditor or lending bank, and the Mechanics and Metals National Bank of New York is referred to as the Mechanics Bank, and sometimes as the lending bank or creditor bank; the terms "borrowing bank" and the "lending bank" being used where it is appropriate in order to show the relationship of the respective banks, where their relationship to certain transactions is being dealt with. The American Bank and the Mechanics Bank both filed their interventions, setting up their claims against the defendant bank, their claims being based upon notes which were secured by collaterals. The depositors filed an answer and petition in the nature of an intervention, and an amendment in the nature of a cross-petition, attacking the claims of the two creditor or lending banks. In this cross-petition it was contended, that the claims based upon the notes held by the lending banks and their demands that the proceeds of certain collaterals be applied to their claims could not be sustained, because the notes were executed by officers of the defendant bank who were without authority to execute them, and that the collaterals transferred to secure these notes were transferred by officers who were without authority to transfer them; and, moreover, that certain of the notes upon which the claims of the creditor banks were based were merely renewals, and were not given for any present consideration that was advanced at the time of taking the notes and the deposit of the collaterals, and that the giving and taking of collaterals under the circumstances amounted to the giving of a preference by an insolvent bank, of whose insolvency the lending bank had knowledge or notice. Certain facts were set forth which are relied upon to constitute notice to the lending banks of the insolvency of the defendant bank. Each of the creditor banks demurred generally and specially to the cross-

petition and amendments of the depositors just referred to. The proceedings in the case were referred to an auditor by an appropriate order of the court; and upon the hearing the auditor, after admitting evidence, sustained the demurrers urged by the creditor banks. These demurrers were not taken up and disposed of at first in their order, but were disposed of after evidence had been adduced. After the hearing the auditor duly filed his report. To the report a large number of exceptions were filed by Collins as executor, and by other depositors. These were overruled, except three exceptions relating to the allowance to the American Bank for certain expenses incurred in making collections upon the collaterals, and to its participation in certain dividends. To the judgment overruling the exceptions filed by the depositors they excepted and brought those exceptions here for review. The American Bank excepted to so much of the judgment as sustained the three exceptions filed by the depositors just referred to.

1. A motion was made to dismiss the bill of exceptions upon the ground that the evidence upon which the auditor based his findings is brought up both in the record and in the bill of exceptions. The motion to dismiss will not be sustained. It is true that there is to a certain extent a confusion in the evidence by bringing up a part of the evidence in the bill of exceptions and bringing all of it up in the record. That portion of the evidence which is brought up in the bill of exceptions is set out under the different assignments of error and purports to be all of the evidence necessary to be considered in passing upon those assignments of error. This method of bringing up the evidence is not altogether free from objection, as it was found in investigating this record that it was necessary in some cases to read both the evidence that was set forth in the bill of exceptions and that which was set forth in the record. We can not approve of this method of bringing up the evidence. In the case of *Delk* v. *Pickens,* 92 *Ga.* 576 (17 S. E. 862), it was said: "The plaintiff in error having copied in full, in the bill of exceptions, the material portions of the record, and having also specified the same to be brought up in the record, in violation of both the letter and the spirit of the act of 1889, prescribing the manner in which cases shall be brought to this court, by duplicating instead of abbreviating the record, the writ of error

must be dismissed." The plaintiff in error in the first of the above cases has not copied the evidence in full in the bill of exceptions and in the record, and we will not apply the ruling in that case, as the case here does not necessarily fall within the letter of that ruling.

2, 3. The first ground of exception to the auditor's report complains that "the auditor erred in finding as a matter of fact that the defendant bank executed and delivered to the American Exchange National Bank a certain note for twenty thousand ($20,-000) dollars, due April 15, 1915; also in finding that the defendant bank executed a certain note for eighteen thousand five hundred ($18,500) dollars, due April 15, 1915; also a note for sixteen thousand five hundred ($16,500) dollars, due June 15, 1915." Upon examination of the record there is found evidence to authorize this finding, and the court did not err in overruling the exception. And in this connection it is proper to deal with the exception to the finding of law which was overruled, and in which the auditor upheld the validity of the notes referred to above. We can not agree with the contention of plaintiffs in error, that the court was in error on the ground that there was no evidence that the officers of the defendant bank were authorized to execute the notes referred to in behalf of the defendant bank. On March 5, 1909, the board of directors of the defendant bank passed the following resolution: "Resolved, that the President, Vice-President, and Cashier of this bank, or either of them, be and are hereby authorized in behalf of this bank to borrow money from the American Exchange National Bank of New York City, and to make and deliver the note or other obligation of this bank in form required by the said American Exchange National Bank of New York for the payment of any sum so borrowed, pledging any of the bonds, stocks, bills receivable, or any other security or property of this bank therefor, and to discount or rediscount the bills receivable held by this bank at any time, or any part thereof, rendering the same negotiable by the indorsement of said officials, and either of them, by authorizing the said American Exchange National Bank of New York to charge the same to the account of this bank, before, at, or after maturity thereof or any part thereof. This authority to be in force until revoked in writing." While the notes which are the basis of the claim of the American Bank were not

executed immediately, or even in the year in which this resolution was passed, and other notes had been in the meantime executed, nevertheless express authority was given in this resolution for the execution of notes of the same character as those held by the American Bank, and in the meantime there had been a course of conduct upon the part of the officers of the defendant bank, consistent with the terms of this resolution, which indicated that they were acting in view thereof and in pursuance of the power granted therein. In the case of *Potts-Thompson Liquor Co.* v. *Potts,* 135 *Ga.* 451 (69 S. E. 734), it was said: "The management of the business of a corporation may be entrusted to its president by express resolution of the directors, or by their acquiescence in a long course of dealing. If he be permitted to carry on the business for a long time and to make contracts for the corporation, contracts made by him incident to and forming a part of the operation of the business will be binding on it, whether or not expressly authorized by the by-laws or by formal action of the directors. 3 Cook on Corporations (6th ed.), § 716 (p. 2290), and cases cited in note 1; Jones *v.* Williams, 139 Mo. 1 (39 S. W. 486, 40 S. W. 353, 37 L. R. A. 682, 61 Am. St. R. 436) ; Jacksonville etc. Co. *v.* Hooper, 160 U. S. 514 (16 Sup. Ct. 379, 40 L. ed. 515)." See also the decision in the case of *Garmany* v. *Lawton,* 124 *Ga.* 876 (53 S. E. 669, 110 Am. St. R. 207). There was no evidence in this case that the authority to do the acts referred to in the resolution quoted above had been withdrawn. It was not necessary, to render valid a note given by the defendant bank to the American Bank for money borrowed in good faith, in view of this resolution and the course of dealings between the two banks as it was made to appear in the evidence, that the lending bank should see to it that a new and separate resolution was passed, expressly authorizing the officer signing the particular note to do so.

4, 5. What is said above is applicable also to the transfer by the defendant bank to the American Bank of collaterals consisting of notes and bills receivable to the amount of some $11,000, and referred to in exceptions 3 to 8, inclusive, in the bill of exceptions. Nor was the finding of the auditor upon the subject, dealt with in that portion of his report attacked in these exceptions, without evidence to authorize it. The evidence shows that a similar resolution to that above quoted was passed by the board of di-

rectors of the defendant bank in July, 1912, authorizing the named officers of the defendant bank to borrow money from and to transfer collaterals to the Mechanics and Metals National Bank of New York, and to execute the notes of the defendant bank, payable to said Mechanics Bank, and that this was done through a long course of dealings; and there was no evidence that the authority thus conferred had been withdrawn. And what is said above is applicable to the same exceptions to the auditor's finding in favor of the claims of the Mechanics Bank.

6. The depositors filed, in addition to their original answer and intervention, a cross-petition and answer to the intervention of the American Bank, attacking the right of the bank to recover. This cross-petition was stricken upon demurrer by the auditor, and to this ruling the depositors excepted. The cross-petition thus stricken covered in part the grounds which we have dealt with above, i. e., the grounds embracing the defense that the officers of the defendant bank executing the notes were, at the time of executing the same, without authority to bind the bank by the writing executed; that the officers of the borrowing bank were without authority, at the time of the assignment and transfer of collaterals, to make such assignment and transfer; and that the notes for the payment of which the lending bank is now contending were renewals. Inasmuch as, under the pleadings in the case, the depositors were permitted to litigate and submit evidence upon these questions, they were not hurt by the sustaining of the demurrer; for the ruling sustaining the demurrer; in so far as it eliminated the pleadings covering those issues, could not be hurtful, inasmuch as the depositors were allowed to adduce evidence upon them and have them determined, as shown by the auditor's rulings and findings of law and fact and the exceptions thereto. But the cross-petition contained also attacks upon the right of the American Bank to recover, based upon the contention that at the time of taking the renewals the borrowing bank was insolvent and the lending bank had notice of this insolvency; and certain facts are set forth in the cross-petition which are relied upon as showing notice to the lending bank: such as, that the borrowing bank was compelled to renew its obligations; that in the spring of 1914 the defendant bank was indebted to the lending bank for money advanced during the year 1913, and for renewal obligations for the

year 1913, in large sums; that during the fall of 1914 this indebt-
edness was reduced only by the payment of a comparatively small
amount; that the renewal notes were being discounted by the lend-
ing bank at six per cent. interest; that the defendant bank did
not receive any cash as the consideration of said notes which were
set forth in the intervention of the American Bank, but the same
were simply renewals; and that subsequently to the execution of
the notes and renewals the defendant bank delivered certain bills
receivable as collateral for certain specified notes; and other simi-
lar facts were set forth as showing evidence of the insolvency of
the borrowing bank. We are of the opinion that the paragraph
setting forth the circumstances relied upon to show notice of the
insolvency of the borrowing bank was properly stricken upon de-
murrer. None ·of these facts was such as to put the lending bank
upon notice that the defendant bank was not financially sound. It
might well have assumed that the borrowing bank could afford to
renew the notes bearing six per cent. interest, and lend money to
customers in a State where a higher rate of interest was legal.
What we have said here in regard to the ruling of the auditor upon
the demurrer filed by the American Bank, touching the grounds
last stated, is applicable also to the rulings upon the demurrer of
the Mechanics Bank to similar grounds in the bill of exceptions
made by the depositors against the latter's claim.

7, 8. The depositors in their cross-petition attack section 2354
of the Civil Code, giving to creditors of banks, who are bona fide
holders of collaterals to secure the payment of their debts, a lien
upon the assets of the bank to the extent of the sums actually col-
lected on the collaterals returned to the bank for collection, on the
ground that it violates par. 2, sec. 1, art. 1 of the constitution of
the State of Georgia (Civil Code, § 6358), which provides that pro-
tection to person and property is the paramount duty of govern-
ment, and shall be impartial and complete. There is no merit in
this contention. It was competent for the legislature to make this
provision in the law giving the lien to the class of persons there
dealt with, as against the class referred to, if the classification was
not arbitrary; and the classification so made in section 2354 is not
arbitrary, but is based upon reasonable grounds of classification.
Nor is this section void on the ground that it deprives "unsecured
creditors of their rights and property without due process of law,

in that a lien is given by said statute in favor of the creditor because of the misdemeanor and malfeasance of the officers of the bank, which was neither contemplated by the creditors of the bank and the several depositors of the bank nor by the stockholders of the bank;" nor on the ground that no provision is made for the asserting or foreclosing of the lien, and no time is fixed by the statute as to when the lien shall begin or when it shall operate. It is not necessary that the section should contain in itself a prescribed procedure for the enforcement of a lien; and the limitation as to when the lien shall begin and operate can be established by the application of other provisions of the code upon a kindred subject.

9. Among the auditor's conclusions of law to which the depositors filed exceptions is the following: "I find that under a decree of this court of Dec. 23, 1915, a dividend of ten per cent. was ordered to be paid to all depositors, out of the funds in the hands of the receiver, not otherwise appropriated. It seems from this decree that this dividend was paid to depositors only, and not to the other creditors. I find that all other creditors should be paid the same dividend before any further general distribution of funds shall be made by said receiver, in order that all creditors of the bank, including depositors, may be placed upon an equal footing with reference to the distribution of its assets." In passing upon the exception to this ruling of the auditor the court held and adjudged that it be not approved, and ruled as follows: "The auditor having reported as above to be his conclusion of law, that the banks who were creditors of the defendant bank, holding collateral securities for the indebtedness of said defendant bank, should receive, ratably and pro rata with unsecured creditors, dividends paid from the general assets of the defendant bank, and at the same time hold collateral pledged as security for their claim, and at the next payment of the dividend the unsecured creditors shall not receive any further dividend until the secured creditors shall have been paid an equal or pro rata dividend, and that said creditors holding securities for their claim shall thereafter share equally with unsecured creditors for the full amount for which their claim is proven, I am of the opinion that this is not the rule applicable to the distribution of the assets of an insolvent bank; that the assets of an insolvent bank in the hands of a receiver

should be distributed upon equitable principles, and when there are two funds or assets to which a creditor can resort, and other creditors are limited to one of them, the former would be compelled to exhaust the assets upon which he has an exclusive lien, and will be permitted to resort to the other fund for deficiency only; and it appearing that the banks holding the receivables and collateral for the indebtedness of the Bank of Southwestern Georgia to them have amounts on their face in excess of the amount of their claim against the defendant bank, the banks so holding secured claims should not participate in the dividends paid, or funds derived from the general assets of the defendant bank, upon which the unsecured creditors have a claim only, except as to any unpaid balance that may be due on claims against the defendant bank, after the securities have been exhausted; that the banks holding securities as aforesaid shall be entitled to share and be paid ratably with the unsecured creditors for any unpaid balance of the claim held by them against the defendant bank. The court is of the opinion that he is without authority to order valued all collaterals held by the various creditors of the said Bank of Southwestern Georgia, or to appoint an auditor to ascertain the value of the same; but ample assets are being retained in the hands of the receiver to pay an equal per cent. as that received by the unsecured creditors, on any unpaid balance that said bank holding securities may have after having exhausted its securities; and therefore the exception to this finding and conclusion of the auditor is hereby sustained and the finding of the auditor set aside." To this ruling the American Exchange National Bank excepted and assigned error. We are of the opinion that the court properly refused to approve this last-stated ruling of the auditor, and are of the opinion that the court's ruling to which the American Bank excepts is in accordance with the rule laid down in the case of *Citizens &c. Bank* v. *Alexander*, 147 *Ga.* 74 (92 S. E. 868) ; and we think that the rule succinctly stated in the headnote to that case should be applied in the present case, and the court's ruling be affirmed.

10.  But under the facts of this case, and in view of the stipulations between the debtor bank and the creditor bank, that "after deducting all expenses, including counsel fees arising from . . the collection of any of said collateral securities, etc., the residue of the proceeds" of the collaterals should be applied to the demands.

of the creditor bank, the auditor was right in allowing the American Bank, as the holder of collaterals, its expenses necessarily incurred in the collection of collaterals, and the court erred in sustaining the exception to this portion of the auditor's finding. The judgment in the case of *American Exchange National Bank* v. *Collins et al.* is reversed solely on the exception to the refusal of the court to approve the finding of the auditor allowing the American Exchange National Bank, as holder of collaterals, its expenses necessarily incurred in the collection of collaterals.

None of the exceptions not specifically dealt with show cause for a reversal of the judgment of the court below.

*Judgment affirmed in the case first stated. In the other case the judgment is reversed in part, but otherwise affirmed. All concur.*